The first case for argument today is Flynn v. Gecker.  Good morning, and may it please the court, Hans German for the appellant, Susan Flynn. I'd like to start by addressing the threshold issue of this court's appellate jurisdiction. We submit that there are two alternative bases for appellate jurisdiction. First, the district court's order is appealable as an injunction under 28 U.S.C. 1292A1. Does it comply with Rule 65? I believe it doesn't, in effect, Your Honor. It doesn't use the word injunction, but as a practical matter, the relief that it orders is clear. It incorporates by reference. That's a violation of Rule 65. I'm sorry, Your Honor. The order grants the motion for turnover of the assets identified in the motion. That's an incorporation by reference. Your Honor, I believe it also recites the specific assets in the order, recites the specific assets at issue. Can Mrs. Flynn comply with it? I'm sorry? Can Mrs. Flynn comply with it? Or has she already disposed of the assets in question? Well, the order, she can comply in the sense that the order requires her to turn over the specific assets or their monetary equivalent. Can she comply by turning over the assets? I don't know that there's anything that prevents her from buying those assets. When did she get rid of the stock and the options? I do not know precisely when. Was it before Judge Pallmeyer issued this order? Yes. It was before that? It was before the order. So she knew before the turnover motion was granted that the assets were gone? Yes. Did she tell you? I did not personally know, Your Honor. No, I did not know. But these are also fungible assets. They're shares of stock and options. Were they publicly traded? Yes. I don't know if they are today. I haven't looked. So she got rid of the subject of the motion before the motion was decided? I'm sorry? She got rid of the subject matter, the property that was the target of the motion before the motion was decided? Your Honor, I believe it was before the motion was filed. Before the motion was even filed? Yes. And was that disclosed to the court? I don't know if it was, Your Honor. How can you not know that? You must know that, counsel. Your Honor, I personally do not know, but I also believe that you do. You personally? You represent a big law firm, a prosperous client, and you don't know the answer to that question? Nobody in the firm knows the answer to that question? Your Honor, I'm sure somebody knows, but the motion at issue in the issue book that was presented to the district court asked for the turnover of the specific assets or their monetary equivalent. So I don't believe it really made a difference whether she held the assets or held the money. So how do you know the monetary equivalent? How do we know that? Yeah. I believe these are publicly traded. They're essentially securities. Now? Can you tell me? What about right now, this minute? I believe it would be possible to determine that. But that means the order is not final. What amount should be on the check that Mrs. Flynn would write to comply with this order? I don't have the exact amount, but I believe the parties have addressed that issue in connection with posting the bond. I believe the parties push on that. And have you agreed on what the amount is? They disagreed as to the date evaluation, but I don't think there was disagreement. So what amount should be on the check? Well, there's disagreement as to what it means to comply with the order. So how is this a final order? Well, it's a final order in the sense that it resolves all the issues that were raised in the motion. There may be a compliance dispute. Could Mrs. Flynn be held in contempt for failing to comply with this order? I believe so. How? I believe if she refused to turn over the assets or their monetary equivalent. Well, she doesn't have the assets, you've told us, right? So she can't do that. And the judge hasn't told her what amount of payment she should make, has she? The judge has not said a specific amount, no. Okay, so do you want to address Liberty Mutual and that line of cases about leaving damages unspecified? Well, Your Honor, this is not a case that involves liability and damages. It is a supplementary proceeding, a post-judgment proceeding, where there is no personal claim against Susan. There is no judgment, and the court did not assess damages and will not assess damages. But has not specified an amount of money to be paid, correct? The court has not specified a dollar figure. The court has specified the assets to turn over or their monetary equivalent. When were these assets transferred to Mrs. Flynn? Your Honor, title vested to her when, well, upon Kevin Flynn's death, pursuant to beneficiary designations. Okay, so that's 2013? 2013, correct. Correct. And here... What's the status of the litigation over the trust assets? That is in trial. That was scheduled for January. Was that postponed? It was postponed. It has been underway. I believe it's resuming today, later today. Today? Yes, the trial is continuing over the trust issues. And that's where the most of the money is, right? Yes. Raising the same issues that are raised on this appeal. Well, there are some... Well, no, in the sense that the issues on the merits as to whether the trustee can reach those assets, those merits issues are different. It's different assets. These are not assets that pass to Susan by way of beneficiary designation. These are assets that were put into a trust created by Kevin Flynn's father, and the dispute is over whether that's a valid benefit trust. So it is a different issue. Now, we do raise some of the same arguments in terms of the effect of the probate exception on whether the court can, the district court can adjudicate those issues and what relief it might, what types of relief it might be able to grant. So there are some... In that sense, we make some of the same arguments. But the merits issues are totally different. And obviously the relief that's sought in the turnover motion is totally different. It concerns different assets. And again, I'd point out that this is... The context here really is unique in that these are supplementary proceedings. And by definition, they're not freestanding claims against Susan. This isn't an adjudication of her personal liability or damages. By definition, these proceedings are limited to identifying assets of the judgment debtor, the estate of Kevin Flynn. And if those assets are found in the hands of third parties, ordering the turnover in satisfaction of the judgment. And that's what the court did here. And that's why we believe this is a final decision under 1291 and also an injunction under 1292. Well, it can't be a final decision if the cash equivalent value was left undetermined. And especially if Mrs. Flynn knew at the time of Judge Palmer's order that she didn't have the stock. So she knew that one of the alternatives in this turnover order was impossible. And the other alternative left something yet to be determined,  Your Honor, if you analogize this to a run-of-the-mill case involving liability and damages, certainly it's correct. It's not final until the amount of damages is established. But this is not that kind of case. It's a turnover proceeding. Right, that's understood. But nobody knows what the cash equivalent value is, at least as things sit right now. So we don't know what this order is directing her to do, according to the only option that remains available because the stock is gone. We believe we do know what the value is. The trustee may disagree with us. Right, meaning there's further litigation. There's a fight over what the value is. Then you go back to district court and determine it. It's not final. But Your Honor, there's always a possibility for disputes about compliance with an injunction with the command of the court. But the injunction doesn't comply with Rule 65 because it's not specific. It has to specifically state what is required by the party who's bound by it. And we don't know what that is because it's not explicitly stated in the order. Your Honor, I believe it is explicitly stated that it's specific assets. The cash equivalent, whatever that is. Right. At the time. As of what date? Well, there was no dispute presented to the district court about that. There was no issue about that. Have you and the trustee agreed about that? That's the point of disagreement, isn't it? That disagreement arose later. That's the point of disagreement, isn't it? That's a point of disagreement that arose later when Susan went to post a bond. And there was a dispute about the amount. But I don't think that post-order dispute should affect the appealability. I mean, assume that the parties agreed. We all know what the monetary equivalent is. Then we wouldn't have to decide. Then you would have an order that specified an amount, right? We would if that dispute had been raised earlier, yes. Or if you had asked, right? You just don't have a final order here. Well, and the dispute about the cash equivalent value could not have been raised earlier because everyone was operating under the assumption that she still had the stock. So she's committed a massive fraud on the court. Well, I don't believe that's accurate on her. I mean, she could repurchase stock and turn it over. I mean, that's one possibility.  This is stunning. How are we going to write it? How do we issue an order? What do we say? Well, Your Honor, we believe that there are, I should ask Your Honor, on the issue of appellate jurisdiction. That's what I'm talking about. Yes, I believe this court can find that this is akin to an injunction because it orders a turnover. Of what? I don't think there's any dispute if it just ordered a turnover of the assets. It would be an injunction. And it gave this alternative that you could turn over the monetary value. At this point, that's the plan. That's what Susan would do. Well, concealing from everyone that she no longer has the subject of the turnover order. I don't think she was concealing it. And she can manufacture appellate jurisdiction by a fraud on the court. Your Honor, it wasn't at issue because the trustee asked for the assets or the monetary equivalent. So it just wasn't at issue. And there was no reason to talk about which it would be. We were fighting the issue on the merits. Or the monetary equivalent. That leaves it clearly an unanswered question. Well, at the time, I don't know that anybody thought there'd be a dispute about what it was. These are publicly, they're prices. So what's the right date for valuation? Stock market's been a little volatile over the last few years. Yes. What's the right date? Well, that's the dispute that arose at the stage of posting a bond. And we believe it would be the date of the turnover order. Because she has the option of turning over the stocks. Why wouldn't she just, why would you use a different value? But she doesn't have the stock. Yes, but if she could. And she had gotten rid of it by before. But if she could buy them and turn them over, she would satisfy the command of the order. So why should the monetary value be anything different than the value at the time of the turnover order? I think, I point to cases like Pyramid Electric in the U line cases that we cite in the brief. And those orders recognize that some orders to pay money are injunctions and some are not. And I think the key under those cases is whether the order effectively decides the merits. In U line, this court stated that section 1292A1 is designed to allow prompt appeals and decisions on the merits. And this purpose informs the definition of injunction. Here we have, the turnover order is the decision on the merits of the turnover order. It decides every issue that was raised in there. And it's not collateral to the merits. We're not talking about an order to pay costs for discovery or an order to place funds into escrow pending a resolution of the merits. We have a final decision on the merits here of the turnover motion itself. And the issue presented there was whether these funds were fraudulently transferred and are available to the trustee. And so I think this is an injunction within the meaning of U line because it's not collateral in any way. It effectively is the merits decision. What was the amount of the bond here? I'm sorry. What was the amount of the bond? I believe it's approximately 2.1 million. With that, I would like to reserve my remaining time if I could. You haven't even begun to address the merits. So you can't do that on rebuttal if you don't at least say a sentence or two. I will address the merits. Let me briefly address the UFTA issues first. First, we think the court wrongly concluded that in valuing Kevin's liabilities at the time of his death, that it could use perfect hindsight to value the trustee's claim, which was then pending. And the court instead valued it at the amount of a judgment and at four years after Kevin's death. I think we've cited three cases that I think are really squarely on point on this issue. The Poloian case, the Freeland case, and the Baldy case, all from this court. And the point of all those cases is that when you're valuing liabilities at the time of a transfer, using a balance sheet test, you value the liabilities as of that time, as of the time of the transfer, which means you don't have perfect hindsight of how things turn out years later. I think those cases and that precedent in this circuit is clear, and I don't think there's any basis for distinguishing those in this case. Turning to the probate exception. In Marshall, the Supreme Court held that the federal courts have no jurisdiction to probate a will or administer an estate. And the probate exception also precludes federal courts from disposing of property that's in the custody of the state probate court. So a key question here is what it means to administer an estate. And the scope of that may not always be clear, but we submit that it includes the core functions of a probate court, like marshaling and distributing the assets of an estate. Under the Probate Act, a key part of the administration of an estate is identifying the assets of the estate, conducting citation proceedings. These assets passed outside of probate. They were never part of the probate estate. That's the whole purpose of a transfer on death designation? That's correct. They did not pass through probate. They passed through a beneficiary designation, but I don't think that does not put them outside. That makes them non-testamentary. They're not part of the probate estate. The exception doesn't apply here. And besides, there was an attempt to manufacture an objection under the probate exception by going back to the state court after the citation was filed. Well, I think at a minimum, Your Honor, if the court correctly ruled that these are assets of the estate that are available to the estate's creditors, then ordering the disposition of those assets to a specific creditor runs afoul of the probate exception. Because at that point, the court has essentially a declaration that these are assets of the estate that estate creditors can reach. At that point, deciding which estate creditors get those assets is the administration or part of the administration of the estate. That's something that at that point the assets should be returned to the probate court once it's been decided that they are estate assets available to estate creditors for the probate court to decide how they are distributed  and here the district court bypassed that completely by ordering a direct distribution. And I think even a lot of the cases that the trustee has relied upon recognize that. Has any other creditor of the estate objected here? I understand we've got one other creditor, right, with a claim for $100,000 and change. Yes, I believe American Express is another creditor. Anybody else? I believe there may be some attorneys who have claims pending in the probate case. Nobody has intervened here or sought to intervene to oppose this turnover motion. But I think even this court in the First Circuit and the Fourth Circuit in the Gustafson case, the Jimenez case, and the Lee Graham Shopping Center case, all recognized in those cases the probate exception did not apply because the relief requested did not require the court to divvy up the estate or to order a distribution out of property of the assets of the estate. I think all three of those cases and all three of those circuits recognize that actually ordering a distribution of assets found to belong to the estate does run afoul of the probate exception. So at a minimum, we believe that on the probate exception, the court could not order that relief, the turnover. Finally, on the res judicata, I think our argument is straightforward just based upon the, you know, there's a codified rule of res judicata in Illinois that applies to accountings approved by the probate court. And, you know, wholly apart from the kind of common law elements of res judicata, I think that statute applies on its face. And I believe I'm out of time. Thank you, counsel. Thank you. Ms. Teague? Good morning. May it please the court. In response to some of the questions that the court asked at the start of the argument, we learned after the judge issued her decision in connection with discussions with counsel that Ms. Flynn had sold the stock and she had done so after her husband's death. And there is a very real dispute here that could very well come back to this court if the court were to reach the merits about the amount. They take the position, which we would contend is contrary to Illinois law, that we measure as of the date of the decision or you measure as of the date she disposed of the stock, which was a lesser market price than the date of the transfer. She also, Mr. Flynn was an insider at LKQ Corporation where this stock, which is publicly traded, was. She did some things with some options or something, as we understand it. I don't totally have a full picture of what she did with the stock, but that caused her to receive a lesser value than the market value. And this court, admittedly in an unpublished decision, but it's followed by the lower courts and is pretty much viewed as the law under fraudulent transfer law, took the position in the base date milling case that you look at the transfer date because that's the date when the property should have been there available for creditors. You don't look at intervening market changes in the stock because that really punishes the party who is the recipient of the particular fraudulent transfer. So what happened after the court issued the ruling, they pretty much immediately appealed. They then went into court seeking a stay of any ability to collect, but honestly we don't have an order that we can use to collect. We don't have a dollar amount, and there isn't stock that we can collect against. We had a discussion which we included in the appendix, the transcript of the discussion. We made it clear we thought the appeal was interlocutory, but because the court had already frozen Mrs. Flynn's use of the trust because of some use that had occurred there in violation of the citations, that we thought it would be appropriate to at least create some security for this amount, which we think is $2.1 million. They took the position it was less. They took the position that they wanted to go out and buy stock and post stock with the clerk. We said we thought that was problematic because of changing market prices, and ultimately what Judge Pallmeyer did, and her hands were tied because they filed a notice of appeal. I don't think she could start issuing additional decisions while an appeal is pending, as I understand the holdings of this court. She then said post the maximum amount that the trustee is suggesting, but it's subject to your ability to come in and make your argument about why the dollar amount of my order should be less. Mrs. Flynn's argument that somehow this should be different than the long, long line of cases that say you don't appeal a declaration of liability until you have damages is really misplaced, we think. Under the Ruggiero decision, which we cite in our brief, what this court has said, and this is very much like bankruptcy appellate jurisdiction as well. When you have a situation where it's not a stand-alone civil lawsuit, you analogize to what the circumstances are in a stand-alone civil lawsuit. And counsel argues that that's not what we have here because this is a supplementary proceeding. Well, Ruggiero was decided in the context of a supplementary proceeding. It created the rule in that proceeding, but they make that argument based on a misreading of the Dexia v. Rogan case and an Illinois appellate court case on which this court based Dexia, which is the Kennedy v. Four Boys Labor Services case. And what that case says is it's drawing a distinction, as did Dexia, between the types of relief a creditor might seek. If a creditor is going in and saying the cited party is fully and completely liable with the judgment debtor for the full amount of the judgment, seeking to impose what the court described in Kennedy as personal liability on that individual or entity for the judgment amount, that requires its own separate lawsuit. So if you would guarantee the debt or there was some reason why you'd be fully liable, you need a separate lawsuit to do that. But if what you're doing is seeking a judgment to recover the value of property that is in that cited party's hands that should have been in the debtor's hands, there the court will impose liability. And the Kennedy case talks about imposing, quoting, impose liability based on the value of the transferred assets. And in that case, the Kennedy case, the Illinois appellate court said, yes, it was totally appropriate for the circuit court to enter a judgment in the dollar amount of the transferred assets. That is an appropriate use of the citation proceeding, which means that a supplementary proceeding is just like a stand-alone civil lawsuit in the sense that you make a determination about whether the person is liable to return that asset, and then you enter an order that imposes the remedy, the dollar amount. And what we're left with here is something that we can't enforce. It isn't collateral. The issue of the dollar amount isn't collateral. If we had to go back down and just live with this order, what they suggest we need to do in our brief is go up to Mrs. Flynn and say, please pay up. She'd say, what do I have to pay up? She'd pay up what she wanted to pay, and then we're supposed to go into court and have a second dispute over that. And that really isn't how the supplementary proceedings work. It's not how courts work. They address issues of liability and then afford relief to the parties. Otherwise, what we have is an advisory opinion. It's an incomplete opinion. It's unenforceable. And it really needs to go back down because the reality of it is we face a second fight in this court potentially. If the court were to affirm, if the parties don't agree about the dollar amount and somebody chooses to take it back up with regard to the matter. With regard to the extent that Judge Palmer thought she was done with this particular issue, that was based on a false premise fostered by Mrs. Flynn because everyone was operating under the assumption that she still had the stock, as I understand the record. That issue wasn't clarified until the bond hearing. Right, it was not clarified at the argument. We filed a motion. They responded. We replied. We had an oral argument at the end of April. No one indicated that during the argument. And the court didn't enter a judgment order. So the appeal was filed so quickly after the decision was entered. It was like within the nine days. It was within a week. I don't know, obviously, what Judge Palmer thought. If she was going to be entering a judgment, if she expected us to come in and get there. Well, she entertained, she held a bond hearing, so she must have thought that she was dealing with an order that was ready for appeal, but that was under a false premise. Right, yes, that's correct. It only was disposed belatedly. Yes, and so we have a situation where we think this needs to go, unfortunately, back down because everybody's briefed the merits, but we do think it has to go back down because there is another real dispute here that would be more efficiently decided in connection with the entire merits. In terms of the other reason why we think it's not final, yes, we were scheduled to go to trial on January 7th, but because of an intervening criminal matter that Judge Palmer had to hear first, she moved the trial to start on January 25th, and we've been on trial since then and are still on trial. And they do raise many of the same probate exception procedural arguments, race judicata that they raise in this particular proceeding. There is an overlap. And again, I think if you analogize it to a standalone civil lawsuit, typically if a court grants relief on one count of a complaint, but there are other matters that are still pending in the court, you don't appeal until everything is resolved, all claims against all parties are resolved. And here we have multiple proceedings coming out of the same citations that were issued against Ms. Flynn. At the risk of being overly formal about this, how is that docketed? Are they docketed under the same district court docket? Yes, everything is under the 4714 number that the main liability case was under. With regard to the merits and the UFTA claim and the argument that somehow the liabilities of Mr. Flynn should be valued at something other than the $219 million judgment, we think that that is not correct under the law and that the court in what she did did not use impermissible hindsight. And the reason for that is that there is nothing wrong with the court taking recognition of facts that were knowable on the date of the transfer. Here the date of the transfer was August 12th of 2013. Judge Pallmeyer's decision setting the liability amount of $272 million and that Mr. Flynn had breached his contract came out on September 30th of 2014. But in terms of what, you all seem to be relying on the mind of Judge Pallmeyer at that time, right, in your brief. Well, what we're saying is if you... She's the trier of fact here. She's the same party who does this. You're arguing that she had everything she needed at that time to determine Flynn's liability, right? Yes. And she determined his liability was about $47 million, which would have left Mr. Flynn's estate solvent, as I understand. No, it wouldn't have, Your Honor. And the reason why it wouldn't, and this wasn't an issue that needed to be fought in this particular proceeding, but we did make clear, and we've made clear in this brief, when you measure the assets that you count, you do not include assets that have either been fraudulently transferred away, so you wouldn't include the value of the stock. You don't include assets held in joint tenancies, so that excludes the $10 million Lincoln Park home that he holds with his wife. And you don't include assets that the judgment debtor claims is exempt because otherwise you could have a circumstance where a party says, I'm perfectly solvent and can pay my claims, but oh, by the way, everything is protected. So the Illinois UFTA eliminates in Section 2b.2 and 3 the ability to include assets that the judgment debtor is claiming is exempt. Because Mr. Flynn claims his trust is exempt, because they claim the house is exempt, you don't count those. So what you're left with is the $300,000 they put on the inventory in the probate estate. And I think you would have to discount our claim very substantially to get it down to the $300,000. But in terms of what, if you assume that, you would just imagine a hypothetical trier of the fact deciding what this claim was worth. On August 12th of 2013, we don't have a contingent liability. What we have is a disputed, unliquidated claim. Every event that took place that fixed Mr. Flynn's liability took place well in the past. You had Abner Mikva as the administrative law judge, the Illinois Gaming Board, the Illinois Appellate Court, each addressing and assessing whether Mr. Flynn had breached, had violated Illinois Gaming Rules, which is what we had to prove to show he breached his contract. So you had three tribunals already finding, well in advance of August 12th of 2013, that he had breached his contract with a massive record. You had that massive record recreated already in front of Judge Pallmeyer that someone could look at. You had a record that showed that that gaming license was offered for auction multiple times and received bids ranging from $615 million down to $272 million. You have a case where Mr. Flynn and his co-defendants presented no contrary evidence of the value. They just took the position they shouldn't be held liable. So that's what you had on August 12th of 2013. This was not a claim in its infancy with no discovery. It was a fully developed record. So what would you do with regard to that case? I think if you wipe everything off and you go back to square one, we took the position that we were entitled to $615 million worth of damage. You look at that and you say to yourself, would you discount that by some probability of success below the $100 million when they want to count their exempt assets or down to $300,000? I don't think you would do that. I don't think it was wrong for Judge Pallmeyer to use that $300,000, pardon me, to use the $219 million judgment amount. And the case law supports that. There's no circuit court case that's done it in the context of an affirmed judgment. But the lower courts, when a judgment on a liability has come down by the time the date the court is assessing insolvency for purposes of fraudulent transfer claim, has used the judgment amount. Because otherwise you're in a counterfactual world where you're trying to figure out something different than what the court actually determined. And I would submit the Palloyan case that they cite of this court doesn't hold that this was wrong. It didn't address a situation anything like this. What this court actually held was, if the court was going to use the contingent liabilities as they were ultimately determined to be, then the court had to, and these were Medicare reimbursement claims that a hospital had, then the court needed to also consider the contingent right that that creditor had against a third party and consider that as an asset. And the court viewed those two things as wiping each other out. In Baldy, we have a truly contingent claim. The question of whether a pension fund liability would come due at the parent corporation level, would there be a default by the underlying debtor, that's truly contingent. The event that causes that claim to occur hasn't taken place. And in Freeland, the problem was you had massive products liability exposure for this company, and it was reversed on the basis one part of the solvency ruling was changed because the court didn't quantify that amount, not that it was inappropriate to consider it, and there was no liquidated judgment amount at the time of that decision. So there's no case that they cite that takes a situation like this where you have a completely massive record and then says ignore everything and come up with some other different discounted amount. As to Judge Pallmeyer's initial ruling of the $45 million, this court found that to be legal error. The decision on which it was based, the One Insure case, was decided in advance, was law in Illinois well in advance of August 12th of 2013. This court didn't make a change in the law. It just simply said the court should have applied the One Illinois Appellate Court case that was in existence. And I don't think you would assume in doing this counterfactual analysis that the hypothetical trier of fact would make a legal error. And that's why I don't think you get to that $45 million judgment amount. With regard to the probate estate exception, again, they have taken the position that this property is non-probate property. It passes under the Illinois TOD Act in a non-testamentary way. The probate court has never exercised any jurisdiction over this race. Post-martial, it's clear that interference occurs when a federal court seeks to exercise jurisdiction over a race, a piece of property, that is subject to some dispute or administration by the probate court. Here, you don't have that. Even when Ms. Flynn, after the fact, attempted to make an end run around what the district court was doing, she was very careful to say that this is not probate property. What she wanted the court to do was to give the property to her as reimbursement for attorney's fees she had already paid. And the probate court said, I'm not going to do this. The federal court is the one that's proceeding here. With regard to Your Honor's question about claims, there is only one other claim in this case. It's American Express. The comment about fees, that's these fee petitions that Ms. Flynn has already paid to the attorneys that she's asking that the stock somehow be given back to her so she can pay those fees. We would submit that Judge Palmeier was not required to order, instead of turning it over to us, that it be turned over to the probate estate. We have an in personam fraudulent transfer claim to recover the stock. That's our claim. And we're entitled to recover that from her individually. It is not a circumstance where we are claiming something that is part of the probate estate. In all circumstances other than bankruptcy, where you stop everyone from pursuing fraudulent transfer claims, creditors can pursue their rights or not as they see fit. No one else has chosen to come forward and make the arguments we're making. And there's no reason why we can't recover because there's somebody else out there who's not making those particular claims. With regard to the res judicata argument, the Illinois statute does not say that it is in lieu of all traditional principles of res judicata. What it says is approval of an inventory is binding. We would submit that the way to construe that with the Illinois case is all of which, when considering the statute, apply traditional principles of res judicata to determine whether that binding order actually is given res judicata effect, is to say that what the statute is saying is an order which would otherwise appear to be interlocutory, because typically these inventories are approved before the probate case is closed, can have the effect of a final order of competent jurisdiction. But that doesn't get around, like any order is binding, doesn't get around what does it mean to be binding. And to be binding under principles of Illinois res judicata law, you have to have the same parties and the same cause of action, and you don't have that here. Ms. Flynn was not required to put this on the probate estate inventory. It passed outside of probate. It would have been absurd for us to go into the probate court and say, why haven't you put the stock on the inventory when it passes outside of probate? And we're seeking this recovery from Ms. Flynn individually, not as an executor. Where that statute comes into play is when someone is suggesting that the executor's administration of the asset on the probate inventory was somehow wrong and they seek to surcharge. That's where you see that statute coming into play. Unless the court has any other questions. Thank you. We rest on our briefs in the argument. How much time? I'll give you a minute just to conclude. If you'd like to use it. I'll be extremely brief. On the issue of appellate jurisdiction, I may be repeating myself, we do think it is key here that this is a turnover order. And so we think the proper analogy is, yes, a dispute is a residence to the amount to pay to satisfy that, but that is like a post-injunction dispute. Disputes arise as to how to comply with an injunction or as to whether someone has complied with an injunction. That doesn't destroy the appealability of the injunction. With respect to the UFTA, the trustee refers to facts knowable on the date of the transfer. I don't think it was knowable on the day that Kevin died that four years later a judgment in the amount of $219 million would be entered against him. I don't think that was a fact knowable. Yes, in a sense it is a disputed, unliquidated claim, but it was still disputed on the date of his death and unliquidated, and the ultimate amount was not a fact knowable on the date of the transfer. If it was, why would the trustee have settled against another defendant for $45 million if the trustee is now saying it was knowable that had she waited two years, she'd get a $200-plus million judgment? The answer is because it wasn't knowable at the time. Thank you. Thank you, counsel. Thanks to all counsel, and the case is taken under advisement.